Hummel v. The Bank of Monroe.

AFFIRMED.

## HUMMEL V. THE BANK OF MONROE.

### MULLENS V. THE SAME.

1. **Agency:** WHEN PRINCIPAL NOT BOUND BY AGENT'S KNOWLEDGE. The general rule that the principal is bound by the agent's knowledge is based on the duty of the agent to communicate to the principal his knowledge with reference to the subject of negotiation, and the presumption that he has performed that duty. But the rule does not hold where the circumstances are such as to raise a contrary presumption. And so, where defendant's cashier, not as a cashier, but in his own personal capacity, by fraud procured the plaintiff to make to him his accommodation note, which he sold to another bank in exchange for a Chicago draft, which draft the defendant bank cashed through him as its cashier, *held* that, though the bank would have been liable to plaintiff if it had cashed the draft with notice of the fraud, yet, as it was against the cashier's purpose to convey to the bank his knowledge of the fraud, it was not liable to plaintiff as being chargeable with his knowledge as its agent.

2. **Trusts:** PROCEEDS OF FRAUD IN HANDS OF THIRD PARTIES. Where defendant's cashier, on his own personal account, fraudulently procured plaintiff to make to him his accommodation note, which note he negotiated for a draft, and cashed the draft as cashier of the defendant, using a part of the proceeds to pay a debt to the defendant, and for the residue taking cashier's checks, which were not negotiable, *held* that defendant, though having no actual or constructive notice of the fraud at the time the draft was cashed, would still be liable to the plaintiff for any of the proceeds of the draft remaining in its hands to the credit of the cashier; but that it could not be presumed, in the absence of proof, after the lapse of two years, that the cashier's checks had not been paid, or that there was any residue of the fund for which defendant would be liable.

*Appeal from Jasper District Court.*—Hon. W. R. Lewis, Judge.

Filed, May 11, 1888.

These causes involve the same questions, and may be disposed of in a single opinion. The appeal in each case is from the order sustaining a demurrer to the petition.

*Bousquet & Earl,* for appellants.

*Winslow & Varnum,* for appellee.

Reed, J.—The substance of the petition in each case is that one R. C. Anderson, who at the time was defendant's cashier and general business manager, defendant being a corporation engaged in a general banking business, by means of certain false and fraudulent representations as to his financial condition and the uses to which he intended to devote the money to be obtained thereon, induced plaintiff to execute to him an accommodation promissory note for five thousand dollars; that he afterwards negotiated said note to an innocent purchaser, in the one case to the Des Moines National Bank, and in the other to the Bank of Newton, receiving therefor in each case the draft of the purchaser on its correspondent in Chicago, payable to his own order; that he subsequently indorsed the draft to defendant, which collected the money thereon, and appropriated the same to its own use; that in the purchase of said draft Anderson acted as the agent of defendant, and for it, and in its name, received the same, and did all of the business pertaining to the transaction; that at the time he knew and had in mind the fact that the draft was the proceeds of said note, and that the signature of plaintiff to the note had been obtained by the fraudulent means alleged; and that at the maturity of the note plaintiff was compelled to pay the same; and that he has not been reimbursed therefor except in the case of

1. AGENCY: when principal not bound by agent's knowledge.

Hummel v. The Bank of Monroe.

Mullens by a small payment made by Anderson. The propositions on which plaintiff's case rests are (1) that as the note was obtained by fraud, plaintiff had a lien upon the proceeds in Anderson's hands for his indemnity against the note, or, in other words, was the equitable owner of the proceeds, and may, pursue the same in the hands of any person who received them from Anderson with notice of his rights; and (2) that defendant is charged with knowledge of the facts out of which plaintiff's lien or ownership of the draft arose, by the knowledge of Anderson, which was present in his mind when he made the purchase for it.

For the purposes of the case the correctness of the first proposition will be conceded. With reference to the other proposition, it will be observed that the transaction in which the note was obtained in no manner pertained to the business of Anderson's office or agency, but was a mere personal matter between him and plaintiff, so that defendant is in no manner responsible for the fraud which was perpetrated on plaintiff in the transaction. It is also to be observed that there is no claim that any other officer or agent of defendant had any knowledge of that transaction, or that the draft was the proceeds of a note obtained from plaintiff. But the effort is to charge it with the liability on the ground solely of Anderson's knowledge. If the alleged fraud upon plaintiff had been perpetrated by another than Anderson, from whom he, acting for defendant, had purchased the draft with the knowledge alleged in this case, there probably would be but little doubt that under the settled rule of law defendant would be liable, and this whether the knowledge was acquired in the course of the transaction of making the purchase or independently of it, if it was present in his mind at the time. The general rule is that the principal is bound by the knowledge of his agent, and that rule is based on the duty of the agent to communicate to the principal his knowledge with reference to the subject of the negotiation, and the presumption that he has performed that duty. *Distilled Spirits*, 11 Wall. 356. There are

exceptions, however, to the rule. Cases may often arise in which the knowledge of the agent has been acquired under such circumstances that he is not at liberty to communicate it. This would be true in the case of an attorney or solicitor who, having acquired information in professional confidence in one transaction, is afterwards employed by another client with reference to the same subject-matter. In such case, as the agent could not, without a violation of the confidence of his former client, make the disclosure of his knowledge to his present principal, there can be no presumption that he did disclose it. *Lowther v. Carlton*, 2 Atk. 242; *Preston v. Tubbin*, 1 Vern. 287; *Hewitt v. Loosemore*, 9 Hare, 456; *Distilled Spirits*, *supra*. And we think another exception, founded on a similar reason, arises when the circumstances are such as to render it certain that the agent did not communicate his knowledge or information to his principal. The notice to the principal of such facts as were known to the agent, and were present in his mind at the time of the transaction, but the knowledge of which was not acquired in the business of the agency, is constructive. Ordinarily, the circumstances are such as to beget a presumption that the communication was in fact made. But when they are of such character that, according to all human experience and observation, the probability is just the reverse, it would be absurd to indulge that presumption. See *Kennedy v. Green*, 3 Mylne & K. 699. In the present case, if defendant had had actual notice when it took the draft of the facts known to Anderson, it would have been chargeable. But there is no probability that it would, with that knowledge, have taken it, and thereby incurred the liability. If he had communicated to it the facts within his knowledge before receiving the benefits which accrued to him under the transaction, all the objects he had in view would have been defeated. His connection with the transaction with plaintiff, and his object in disposing of the draft, were such that it is extremely improbable that he ever made the communication to it, and we think it cannot be charged with

Hummel v. The Bank of Monroe.

constructive notice of the facts. It was contended by counsel for appellee that Anderson, being himself the seller of the draft, could not act as agent for defendant in its purchase. The rule, undoubtedly, is' that one occupying a position of trust cannot bind his principal by a contract in which he has an adverse interest. But this question is not deemed of practical importance in the case. The question whether defendant is liable to plaintiff does not depend upon whether Anderson had authority to make that particular purchase, or on whether, by its subsequent action, it has ratified the purchase, but on whether it is chargeable with notice of the facts known to him.

In one of the causes it is averred that when Anderson indorsed the draft to defendant he applied a portion of the proceeds in satisfaction of an indebtedness he was owing it, and for the balance he issued to himself what is denominated "cashiers' checks," the same being non-negotiable instruments. And it was contended that the delivery of these checks did not constitute the defendant a purchaser for value of the draft, and that it is liable on that ground. It is doubtless true that defendant could have been held for any balance of the proceeds of the draft remaining in its hands to the credit of Anderson after it was informed of the fraud perpetrated by Anderson in obtaining the note, and that the draft was the proceeds of the note. But it does not appear from any averment of the petition that it was informed of these facts at any time before the commencement of the suit, which was several years after the transaction. Neither is it alleged that any portion of the proceeds then remained in its hands. The mere fact that the checks were not negotiable does not raise a presumption that they have not been paid.

2. TRUSTS: proceeds of fraud in hands of third parties.

We think the demurrers to the petitions were properly sustained.

AFFIRMED.